UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA          :

          - against -              :

MICHAEL CHU,                       :

          Defendant.               :

- - - - - - - - - - - - - - - - - -x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/5/12

OPINION

11 Civ. 4752 (DC)
07 Cr. 1143 (DC)

APPEARANCES:     PREET BHARARA, ESQ.
                 United States Attorney for the
                 Southern District of New York
                      By:  Rosemary Nidiry, Esq.
                           Assistant United States Attorney
                 One Saint Andrew's Plaza
                 New York, New York  10007

                 MICHAEL A. YOUNG, ESQ.
                 Attorney for Defendant
                 165 Christopher Street, Ste. 2D
                 New York, New York  10014

CHIN, Circuit Judge

          On January 6, 2009, defendant Michael Chu pled guilty

to conspiracy to smuggle merchandise into the United States and

trafficking in counterfeit goods.  On July 27, 2009, I sentenced

him principally to 97 months' imprisonment.  Chu moves pursuant

to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence

on the grounds that he did not knowingly and voluntarily enter a

USDC SDNY
DATE SCANNED  12/5/12

guilty plea, and that he was provided ineffective assistance of counsel. For the reasons set forth below, the motion is denied.

## BACKGROUND

### A. Procedural History

Chu was indicted on December 12, 2007, and pled guilty, pursuant to a plea agreement, on January 6, 2009. I sentenced Chu on July 27, 2009, and he timely appealed to the Second Circuit on August 10, 2009. Nearly two years later, while his appeal was still pending, Chu, proceeding pro se, moved pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. The Second Circuit stayed Chu's appeal pending the outcome of his § 2255 motion. Following a number of conferences, Chu, with the assistance of counsel, filed a supplemental § 2255 motion on May 25, 2012. I held an evidentiary hearing on July 19, 2012.

### B. The Facts

#### 1. The Underlying Scheme

Beginning in approximately June 2006, Chu, along with ten co-conspirators, participated in a large international smuggling operation. (PSR ¶ 20).[1] Specifically, the

---

[1] References are as follows: "Ind't" for the grand jury indictment of Chu filed on December 12, 2007; "Plea Agmt." for

organization smuggled counterfeit merchandise, worth at least $200 million, into the United States from China via the Port Newark-Elizabeth Marine Terminal in New Jersey. (_Id._). Chu and others then transported these goods into the Southern District of New York and elsewhere in the metropolitan area for storage and redistribution. (_Id._ at 21). The scheme depended on a corrupt union official who could clear imported goods through U.S. customs. (_Id._ at 29). Unbeknownst to the co-conspirators, the

---

the plea agreement, dated January 6, 2009; "Plea Tr." for the transcript of Chu's plea allocution on January 6, 2009; "PSR" for the Revised Presentence Investigation Report, dated July 20, 2009; "Sen. Tr." for the transcript of Chu's sentencing on July 27, 2009; "Pet. Notice of Appeal" for Chu's Notice of Appeal, filed on August 10, 2009; "§ 2255 Mot." for Chu's original § 2255 motion, filed on July 11, 2011; "Sept. 26, 2011 Order" for an order signed by Judge Chin on September 26, 2011; "Nov. 1, 2011 Tr." for the transcript of the conference on November 1, 2011; "Jan. 12, 2012 Tr." for the transcript of the conference on January 12, 2012; "Brady Feb. 1, 2012 Letter" for Brady's February 1, 2012 letter to Judge Chin; "March 5, 2012 Tr." for the transcript of the conference on March 5, 2012; "March 26, 2012 Order" for an order signed by Judge Chin on March 26, 2012; "Pet. Supp. Mem." for Chu's supplemental brief in support of his § 2255 petition, dated May 25, 2012; "Pet. Supp. Aff." for Chu's affirmation in support of his supplemental § 2255 motion, dated May 25, 2012; "Gov't Mem." for the Government's memorandum in opposition to Chu's § 2255 motion, dated June 14, 2012; "July 19, 2012 Tr." for the transcript of the evidentiary hearing on Chu's § 2255 petition on July 19, 2012; "Gov't July 20, 2012 Letter" for the Government's letter to Judge Chin, dated July 20, 2012; "Gov't Post-Hearing Mem." for the Government's Post-Hearing Memorandum of Law in Opposition to Chu's § 2255 Petition, dated August 13, 2012; and "Pet. Post-Hearing Mem." for Chu's Post-Hearing Memorandum of Law, dated August 13, 2012.

union official was in fact an undercover federal agent.  (<u>Id.</u> at
20).

Chu bribed the undercover agent with multiple cash
payments (totaling over $100,000), and provided him with
information regarding incoming shipments -- specifically, 59
containers of counterfeit merchandise, valued at approximately
$56,765,450.  (Ind't ¶ 5; PSR ¶¶ 30, 97; Gov't Post-Hearing Mem.
19).  Additionally, Chu monitored and coordinated the actions of
his co-conspirators.  (PSR ¶¶ 31, 32, 36).  On December 5, 2007,
law enforcement officers raided a warehouse where the smuggled
goods were stored.  (<u>Id.</u> at 94).  Chu was arrested later that
day.  (<u>Id.</u> at 95).

### 2. <u>The Defendant</u>

Chu emigrated to the United States from Shanghai,
China, and is a United States citizen.  (Plea Tr. 10; Pet. Supp.
Aff. 1).  He is seventy-five years old and suffers from advanced
diabetes.  (Pet. Supp. Aff. 1).

Chu speaks and understands English.  He has been living
in the United States for over three decades, working in the
textile import-export business.  (Sen. Tr. 4-5, 9-10).  During
that time, he was able to understand and converse effectively, in
English, with his lawyer, David Singer, regarding a number of

legal matters. (Nov. 1, 2011 Tr. 3-5). He was also able to understand and converse with other counsel he retained in relation to this proceeding. (_Id._ at 8).

Additionally, Chu conversed with me, in English, in a coherent and intelligent manner throughout the many court proceedings in this case.[2] These conversations included a lengthy explanation of the underlying counterfeit scheme, which Chu described in English. (Plea. Tr. 14-19). Further, Chu consistently acknowledged and demonstrated that he understood what I was asking him. (_Id._ at 3-4; Sen. Tr. 2, 12; Nov. 1, 2011 Tr. 12-13). Prior to filing his § 2255 motion, Chu had not requested an interpreter for any of the proceedings in this case, and never demonstrated the need for one.

### 3. David Singer

Chu was initially represented in this case by Singer, who had represented Chu in various other matters since 1978. (Nov. 1, 2011 Tr. 3-4). These included a number of minor civil cases, commercial transactions, bankruptcy proceedings, and one criminal case in the Eastern District of New York. Chu

---

[2]     These proceedings included, for example, the plea allocution on January 6, 2009; the sentencing on July 27, 2009; and the status conference on November 1, 2011.

prevailed in that case on a motion to dismiss. (_Id._; July 19, 2012 Tr. 36). Singer has over thirty years of general litigation experience, in both state and federal court, litigating forfeiture, tax fraud, drug, and murder cases. (July 19, 2012 Tr. 35).

### 4. The Indictment

On December 5, 2007, a grand jury sitting in this District indicted Chu on three counts. First, it charged Chu with conspiracy to smuggle merchandise into the United States and traffic counterfeit merchandise in violation of 18 U.S.C. § 371. (Ind't ¶¶ 1-17). Second, it charged Chu with smuggling and attempting to smuggle counterfeit merchandise into the United States in violation of 18 U.S.C. § 545. (_Id._ at 18-19). Third, it charged Chu with trafficking counterfeit goods into the United States in violation of 18 U.S.C. § 2320. (_Id._ at 20-21).

### 5. Plea Negotiations

Singer entered into negotiations with the Government about the terms of a plea agreement -- specifically, the value of counterfeit goods attributable to Chu, his role in the scheme, and the appropriate Guidelines range. (Gov't July 20, 2012 Letter at 1-2; Nov. 1, 2011 Tr. 10.). Originally, the Government proposed a sentencing range -- 168-210 months if the case

resolved before trial, 239-293 months if the case resolved after trial -- based on the full Manufacturer's Suggested Retail Price ("MSRP") of the counterfeit goods. (Gov't July 20, 2012 Letter at 2). Singer negotiated a 75% decrease in this figure. (Gov't Post-Hearing Mem. 19). As a result, the plea agreement reflected a Guidelines range that was based, in part, on a determination that the goods for which Chu was responsible were valued between $7-$20 million. (Plea Agmt. at 2). This was a fraction of the estimated retail value of the goods in the 59 containers attributable to Chu (Gov't July 20, 2012 Letter at 1), and resulted in a significantly lower sentencing range -- 97-121 months -- than the Government originally calculated. (Plea Agmt. at 3).

Singer did not physically examine the contents of the containers; however, none of the counsel for the six co-defendants who also accepted plea agreements examined the goods.[3] (Gov't July 20, 2012 Letter at 2). Moreover, no counsel

---

[3]     Of the ten other co-defendants in this case, three pled guilty to misdemeanors and two pled guilty pursuant to cooperation agreements. The five remaining co-defendants pled guilty to felonies pursuant to non-cooperation plea agreements. Two of those defendants pled to loss calculations based on the full MSRP of the counterfeit goods, while the remaining three were able to negotiate a 75% discount similar to that secured by Chu. (Gov't July 20, 2012 Letter at 1-2).

negotiated an infringement value lower than that negotiated by Singer. (_Id._ at 1).

### 6. Plea Agreement and Allocution

On January 6, 2009, Chu pled guilty, pursuant to a plea agreement, to conspiracy and trafficking counterfeit goods. (Plea Agmt. at 1). The plea agreement reflected the plea negotiations detailed above, and provided for a stipulated Guidelines range of 97-121 months. (Plea Agmt. at 3-4). Chu agreed not to file a direct appeal or litigate any sentence within or below that range. (_Id._).

Singer represented Chu at the plea allocution on January 6, 2009, which was conducted entirely in English. Chu confirmed that he had read the indictment and had discussed it with his lawyer. (Plea Tr. 5-7). We had the following colloquy at the outset of the hearing:

> THE COURT: You've had enough time to review it [the plea agreement] with your client?
>
> MR. SINGER: Yes. We've had about 15 minutes, your Honor.
>
> THE COURT: I want to make sure you've had sufficient time to review it with your client.
>
> (Pause)

MR. SINGER: I want to make sure my client feels --

THE COURT: Yes.

MR. SINGER: Yes.

MR. SINGER: Okay. Yes, your Honor, we've had sufficient time.

.   .   .

THE COURT: Mr. Chu, do you understand that you are now under oath, and that if you answer my questions falsely, your --

THE DEFENDANT: Yes.

THE COURT: Your false answers could later be used against you in another prosecution for perjury or making false statements?

THE DEFENDANT: Yes.

.   .   .

THE COURT: Have you had a full opportunity to discuss your case with your attorney, and to discuss the consequences of pleading guilty?

THE DEFENDANT: Yes.

THE COURT: Are you satisfied with your attorney, Mr. Singer, and his representation of you?

THE DEFENDANT: Yes.

(Id. at 2-5).

Additionally, Chu stated that he had read and understood the terms of the plea agreement, and was aware that he would forfeit certain rights by entering a guilty plea (Id. at 13-14). Chu also waived his right to appeal or to challenge any sentence within or below the guideline range. (Id. at 12-13). During the hearing, Chu also explained the details of the scheme to me in English. (Id. at 14-19).

### 7. **Sentencing**

On July 27, 2009, Chu appeared for sentencing. I considered all the facts and circumstances, including, *inter alia*: 1) the extent of the trafficking; 2) the amount in bribes paid to the undercover agent; 3) Chu's central role in the scheme; and 4) Chu's age. I also reviewed the PSR and the plea agreement. Chu pled guilty to importing between $7 million and $20 million worth of counterfeit goods in a large, international smuggling operation, and paying approximately $107,000 in bribes to the undercover agent. (Sen. Tr. at 19-20). In addition, Chu played a key role in the scheme. (Id. at 20). He was, however, seventy-one years old at the time of sentencing. (Id. at 19-20). Taking into account all the circumstances, I sentenced Chu to concurrent terms of 60 and 97 months' imprisonment, with two years of supervised release and forfeiture of specified property.

(<u>Id.</u> at 20-21). The 97-month term of imprisonment was at the bottom of the stipulated Guidelines range. (PSR ¶ 174).

### 8. <u>Appeal and the July 8, 2011 § 2255 Petition</u>

Chu timely appealed on August 10, 2009. (Pet. Notice of Appeal). In the years that followed, Chu changed counsel multiple times, and thus the appellate proceedings were delayed. On July 11, 2011, Chu filed a <u>pro se</u> § 2255 petition to vacate, set aside, or correct his sentence on the grounds that he did not knowingly or voluntarily enter into the plea agreement, and that the assistance provided by counsel had been ineffective. (§ 2255 Mot. 1-4). Specifically, Chu contended that he was not provided with an interpreter, was unable to adequately understand the proceedings or the plea agreement, and was denied sufficient time to discuss the plea agreement with counsel. Further, Chu alleged that his counsel failed to adequately investigate the infringement value of goods attributable to him, and possessed a deficient understanding of the relevant law and procedure.[4] (<u>Id.</u>

---

[4] Chu makes a number of other allegations in addition to these claims, including: actual innocence, prosecutorial misconduct, obstruction of justice, entrapment, and insufficient evidence. Some of these claims are reiterated in Chu's Supplemental Brief, while others are unaddressed. Many of these claims (i.e. entrapment, prosecutorial misconduct, etc.) have not been raised since Chu's initial § 2255 motion, and were not considered at any of the subsequent conferences or hearings, or

at 3).  The Second Circuit stayed the appeal pending the outcome of the § 2255 petition.

### 9.  **The November 1, 2011 Conference**

On November 1, 2011, I held a status conference to address Chu's § 2255 claims.  Chu (proceeding pro se), Singer (no longer representing Chu), and Alan Fraade, another of Chu's attorneys, attended, along with the Government.[5]  At the conference, in response to my questions, Singer stated that, during his approximately thirty-year representation of Chu, he regularly conversed with Chu in English and was confident that Chu could understand him during the underlying proceedings.

---

in post-hearing briefing.  I therefore conclude that Chu waived these claims and I do not address them in this opinion.  See United States v. Deandrade, 600 F.3d 115, 120-21 (2d Cir. 2010) (summarily rejecting meritless pro se claims where both pro se and counseled briefs were submitted); Ennis v. LeFevre, 560 F.2d 1072, 1075 (2d Cir. 1977) (despite assertion of unique issues in pro se brief, court only considered arguments asserted by counsel).

[5]     Fraade had represented Chu for approximately a year and a half after the sentencing and before Chu filed his § 2255 petition pro se.  (Nov. 1, 2011 Tr. 8-10).  Another attorney, Lisa Scolari, had also briefly represented Chu in the interim regarding his pending appeal.  (July 19, 2012 Tr. 20-21).  After the case was returned to me, I appointed Chu counsel under the Criminal Justice Act -- Colleen Brady.  Brady was relieved when Chu retained his current attorney, Michael Young.

(Nov. 1, 2011 Tr. 4-5). Singer confirmed that Chu could read and write English and had reviewed the plea agreement:

> MR. SINGER: . . . And when we came here I went in the back, and I had 15 minutes to read it to him. I read it to him. I asked him if he understood it, he said yes, and then we came out.
>
> THE COURT: And do you have an understanding as to whether Mr. Chu can read and write English?
>
> MR. SINGER: It's my understanding that he can . . . .

(<u>Id.</u> at 6-7).

Fraade further confirmed Chu's English proficiency; during his representation of Chu, he also conversed regularly with his client in English and believed Chu understood him. (<u>Id.</u> at 8).

Before the conference, Chu requested an interpreter. This was the first time he had made such a request. The interpreter, however, arrived late, apparently due to train delays. (<u>Id.</u> at 13). Nonetheless, Chu and I conversed in English at the conference, and Chu explicitly confirmed that he understood what I was saying:

> THE COURT: All right. And are you understanding what I'm saying now, by the way?

MR. CHU: Yes, I understand.

(Id.).

At the conference, I inquired as to how the value of the smuggled goods had been calculated. The Government reported that the parties had calculated the value of the goods following extensive negotiations and in accordance with Guidelines recommendations. (Id. at 10). At the end of the conference, I appointed CJA counsel for Chu. (Id. at 20).

### 10. **The January 10, 2012 Conference and CJA Representation**

I held a status conference on January 10, 2012. At the conference, Brady stated that Chu no longer wished to withdraw his plea, but was still intent on asserting an ineffective assistance of counsel claim for the representation he received at sentencing. (Jan. 10, 2012 Tr. 4-5). Brady indicated that Chu would thereafter file an amended petition; however, on February 1, 2012, Brady informed me that, upon further consideration, Chu would not be filing an amended petition. (Brady Feb. 1, 2012 Letter). On March 5, 2012, I held another conference at which Brady stated that Chu, in fact, still wished to pursue his § 2255 motion, and was in the process of obtaining other counsel. (March 5, 2012 Tr. 2-3). On March 26, 2012, Young filed a notice

of appearance on behalf of Chu, and I relieved Brady as Chu's
counsel. (March 26, 2012 Order).

### 11. The May 25, 2012 Supplemental § 2255 Brief

On May 25, 2012, Young filed a supplemental § 2255
brief on Chu's behalf. (Pet. Supp. Mem.). In his supplemental
brief, Chu reiterated many of the claims outlined in his initial
petition. (Compare § 2255 Mot. 1-4 with Pet. Supp Mem.).
Additionally, Singer submitted an affidavit detailing his meeting
with Chu at the plea hearing and their discussion of a likely
sentence. (Pet. Supp. Aff., Ex. A). On July 19, 2012, I held an
evidentiary hearing at which several witnesses testified.
Specifically, Lisa Scolari, one of Chu's former lawyers,
questioned a number of Singer's tactical decisions. (July 19,
2012 Tr. 30-31).

### DISCUSSION

Chu's motion is denied. First, Chu waived his right to
collaterally attack his conviction and sentence. Second, even
assuming Chu did not waive his right to make this challenge, the
motion fails on the merits.

### A.   Knowing and Voluntary Waiver

Chu argues that he did not knowingly and voluntarily
enter into the plea agreement because he lacked a sufficient

understanding of the terms of the agreement, was unable to
effectively understand his counsel, and was denied adequate time
to review the agreement. I find that Chu fully understood the
consequences of entering into the plea agreement, and voluntarily
waived his right to challenge the plea.

1. **Applicable Law**

It is well established that a defendant may, in
entering into a plea agreement, waive his right to appeal or to
file a petition under 28 U.S.C. § 2255. <u>United States v. Gomez-
Perez</u>, 215 F.3d 315, 318 (2d Cir. 2000). When a defendant has
waived his right to appeal or collaterally attack his sentence,
any challenge to the enforceability of his plea is limited to the
constitutionality of the process by which it was entered. <u>United
States v. Hernandez</u>, 242 F.3d 110, 114 (2d Cir. 2001) (per
curiam).

Courts have affirmed the constitutionality of this
process where a defendant "knowingly and voluntarily" enters into
a plea agreement. <u>United States v. DeJesus</u>, 219 F.3d 117, 121
(2d Cir. 2000). In making this determination, the court is
entitled to rely on a defendant's statements made at the plea
allocution, <u>Hernandez</u>, 242 F.3d at 112, including statements that
the defendant was previously satisfied with counsel and

understood the terms of the plea agreement.  Id.; DeJesus, 219
F.3d at 121.  "[S]tatements at a plea allocution carry a strong
presumption of veracity."  United States v. Torres, 129 F.3d 710,
715 (2d Cir. 1997).

A valid plea agreement waiver precludes appellate
review of the issues within its scope.  Hernandez, 242 F.3d at
114.  And "[i]n no circumstance . . . may a defendant, who has
secured the benefits of a plea agreement and knowingly and
voluntarily waived the right to appeal a certain sentence, then
appeal the merits of a sentence conforming to the agreement."
United States v. Salcido-Contreras, 990 F.2d 51, 53 (2d Cir.
1993) (per curiam).

### 2.  Application

Chu argues that his limited grasp of the English
language, inability to effectively understand counsel, and lack
of sufficient time to review the plea agreement rendered his
waiver unknowing or involuntary -- and therefore
unconstitutional.  For the reasons outlined below, this argument
lacks merit.

### a.  English Proficiency

Chu's present claim that his English was insufficient
to offer a knowing plea is belied by numerous indicia of his

English proficiency. As detailed above, Chu confirmed, on multiple occasions, that he was proficient in speaking English. (Nov. 1, 2011 Tr. 13; Plea Tr. 7, 13). Given the "strong presumption of veracity" afforded to these statements, <u>Torres</u>, 129 F.3d at 715, I was entitled to rely on them. <u>Hernandez</u>, 242 F.3d at 112; <u>see also</u> <u>Benitez v. Green</u>, No. 02-Civ-63321, 2005 WL 289753, at *9 (S.D.N.Y. Jan. 31, 2005) (rejecting claim, in habeas petition, that defendant did not understand plea agreement where he had repeatedly conversed with the court in English). Based on the findings of fact outlined above, I conclude that Chu was able to effectively speak and understand English throughout these proceedings.

### b. <u>Request for Interpreter</u>

Chu requested an interpreter for the first time at the November 1, 2011 status conference.[6] Though the interpreter arrived late, Chu nonetheless understood my direction and consulted with counsel on legal issues. (Nov. 1, 2011 Tr. 13). His argument, therefore, that he required an interpreter

---

[6] Chu had previously attended at least four prior hearings without an interpreter present. Only after raising claims that he had difficulty understanding English for the first time in his § 2255 motion did Chu request the aid of an interpreter.

- 18 -

throughout the proceedings and Singer failed to request one on
his behalf, is rejected. <u>See</u> <u>Shahid v. United States</u>, Nos. 11-
cv-8261(CM), S1 07-cr-489(CM), 2012 WL 1883699, at *4-5 (S.D.N.Y.
May 22, 2012) (finding ineffective assistance claim based on
failure to use interpreter meritless where defendant engaged in
dialogue with the court and confirmed understanding of English).

### c.   <u>Relationship with Counsel</u>

Chu also had a longstanding relationship with Singer,
dating back some thirty years and spanning legal representation
across a number of matters. (Nov. 1, 2011 Tr. 3-4). Chu and
Singer communicated effectively in English during this time
regarding various legal issues. (<u>Id.</u> at 4-5). Chu was also able
to confer successfully in English with Fraade. (<u>Id.</u> at 8). In
light of this history, Chu's <u>post hac</u> claim that he could not
understand Singer's advice regarding this specific allocution is
not credible.

### d.   <u>Review of Plea Agreement</u>

At the plea allocution, Chu affirmed that he had
reviewed the indictment and discussed it with counsel. (Plea Tr.
5-7). He further confirmed that he understood the plea
agreement, was entering his plea free from duress and upon his

own volition, and was satisfied with his counsel's representation. (Id. at 2-7).

The fact that Chu only reviewed the plea agreement for fifteen minutes is insufficient to show that he lacked adequate time to fully comprehend the agreement, and is belied by his confirmation, at the plea allocution, that it was indeed sufficient time. See Hernandez, 242 F.3d at 112-14 (upholding knowing and voluntary waiver where defendant reviewed plea agreement in five minutes); see also United States v. Mendez, No. S2-94-Cr-466 (JFK), 1996 WL 665637, at *5 (S.D.N.Y. Nov. 15, 1996) (finding that defendant's affirmation that he had enough time to review plea agreement belies post hac claim that defendant lacked requisite time to review agreement). Moreover, I offered to give him more time to review the agreement with counsel, but Chu declined. (Plea Tr. 2-5).

Accordingly, I find that Chu knowingly and voluntarily waived his right to appeal or challenge the sentence. Hence, this motion is barred by the waiver in his plea agreement.

## B. Merits

Even assuming Chu did not waive his right to bring a § 2255 motion, the motion fails on the merits.

## 1.  **Ineffective Assistance of Counsel**

Chu contends that his counsel provided ineffective assistance, both with respect to his guilty plea and his sentencing.  For the reasons set forth below, I reject these arguments.

### a.  **Applicable Law**

Courts evaluate whether an attorney has provided ineffective assistance of counsel pursuant to the two-prong framework established in <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984).  Under the <u>Strickland</u> standard, a defendant must show that his counsel's representation fell below an "objective standard of reasonableness."  <u>Id.</u> at 687-88.  Reasonableness is measured against prevailing professional norms.  <u>Id.</u> at 688. Judicial scrutiny of counsel's performance is extremely deferential and carries a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  <u>Id.</u> at 689; <u>see also United States v. Berkovich</u>, 168 F.3d 64, 67 (2d Cir. 1999).  Further, "the court must make every effort . . . to eliminate the distorting events of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the

time." Henry v. Poole, 409 F.3d 48, 63 (2d Cir. 2005) (internal
quotations omitted).

　　　　If a defendant can demonstrate deficient performance,
he must also establish that the ineffective assistance of counsel
resulted in "substantial prejudice." Strickland, 466 U.S. at
687. Specifically, substantial prejudice results when there is a
reasonable probability that, but for counsel's unprofessional
errors, the result of the proceeding would have been different.
Id at 694; see also United States v. Arteca, 411 F.3d 315, 320
(2d Cir. 2005) (holding that petitioner must show that "there is
a reasonable probability that were it not for counsel's errors,
he would not have pled guilty and would have proceeded to
trial"). A defendant who swears in open court that he has
enjoyed effective assistance of counsel faces an uphill battle
when he later seeks to retract these assertions. See Torres, 129
F.3d at 715 (addressing counsel's performance during the plea
process).

　　　　b.　　**Application**

　　　　Chu makes a number of related arguments regarding his
counsel's performance: 1) Singer failed to request an
interpreter; 2) Singer failed to adequately investigate or
negotiate the value of the counterfeit goods; and 3) Singer

lacked the requisite experience to successfully represent Chu in this matter. Chu's additional claims regarding Singer's failure to adequately explain the plea agreement have been addressed in Part A(2), supra, and therefore are not reiterated here. For the reasons set forth below, I find that Chu did not receive ineffective assistance of counsel.

### i.    Objective Standard of Reasonableness

### aa.    Failure to Request Interpreter

To the extent that Chu argues that he required an interpreter and Singer subsequently failed to obtain one for him or adequately recognize the need for one, this contention is unavailing for the reasons set forth above. Moreover, there is no indication that Chu raised the need for an interpreter with Singer at any time, or that Singer ignored any request for one. Thus, this argument fails. See United States v. Vargas, 871 F. Supp. 623, 625 (S.D.N.Y. 1994) (rejecting ineffective assistance of counsel claim partly based on failure to request interpreter where defendant did not express need for interpreter to counsel at any time); see also Vellon v. David, Nos. 01-cv-6505(JBW), 03-misc-0066(JBW), 2003 WL 23185761, at *6-7 (E.D.N.Y. Nov. 11, 2003) (finding that, though defendant was more comfortable

speaking Spanish, he was proficient enough in English to understand court and interpreter was therefore unwarranted).

### bb. **Failure To Investigate**

Chu further contends that Singer failed to meet the reasonableness standard required by Strickland because he did not independently examine the counterfeit goods or otherwise challenge the Government's initial estimate of their value. (Pet. Supp. Mem. 3-14). Chu specifically argues that Singer violated the ABA Standards for Criminal Justice by not conducting an "appropriate investigation and study of the case" or "an analysis of controlling law and the evidence likely to be introduced at trial." (Pet. Supp. Mem. 4) (quoting ABA Standards for Criminal Justice R. 4-6.1 (3d ed. 1993)). Chu states that Singer should have hired an expert to further analyze the value of the counterfeit merchandise attributed to him, or physically examined the contents of the containers to determine whether the value ascribed to the goods by the Government was appropriate.[7]

--------------------------------------------------

[7] Chu makes a number of additional factual challenges concerning the Government's calculation of the value of the counterfeit goods. In doing so, Chu not only relies on an outdated spreadsheet that was later amended and produced to the defendant (Gov't Mem. 25-26, n.5), but makes a number of incorrect and baseless assumptions regarding the value of the merchandise which do not warrant discussion here. For example, Chu argues that the Government's reliance on the MSRP as a metric

Singer successfully negotiated a 75% decrease in the value of goods attributable to Chu, and, as a consequence, a substantial decrease in his sentencing exposure. Therefore, Singer's decision not to examine each container could very well be deemed strategic. See United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987) (rejecting ineffective assistance of counsel claim and holding that counsel's decision not to investigate certain avenues of defense is accorded significant deference in Strickland test). Had Singer chosen to physically open each container, examine the goods, and render an independent valuation, it is entirely possible that, contrary to Chu's assumption, the Government's initial calculation of value might have proved to be too low.

Furthermore, Singer's conduct in this respect was objectively reasonable when compared with the conduct of counsel for Chu's co-defendants, none of whom asked to inspect the counterfeit merchandise. See Lundgren v. Mitchell, 440 F.3d 754,

---

in calculating the value of the counterfeit goods was in conflict with the Guidelines specification that the "retail value" be used. The Government, in fact, concedes this argument, stating in its July 20, 2012 letter that Singer was able to "demonstrate that such a position was not necessitated by the Guidelines." (Gov't July 20, 2012 Letter at 1-2). This accounted for the 75% decrease in the MSRP that Singer was ultimately able to obtain for his client.

797 (6th Cir. 2006).  Therefore, Chu cannot demonstrate that

Singer's failure to investigate the counterfeit merchandise fell

outside "the wide range of reasonable professional assistance."

Strickland, 466 U.S. at 689; see also Lundgren, 440 F.3d at 797

("One indicium of reasonableness is the conduct of other counsel

in similar situations.").

### cc.  Lack of Experience

Chu also contends that Singer lacked the requisite

federal criminal experience to provide adequate assistance in

this case.  Specifically, he argues that Singer failed to pursue

obvious procedural routes to best protect his interests,

including failing to obtain a proffer or a cooperation agreement.

(July 19, 2012 Tr. 10, 30-31; § 2255 Mot. 2-3; Pet. Post-Hearing

Mem. 16).  Singer is an experienced attorney whom Chu has relied

on in the past to handle complex and important matters, including

another federal criminal case (which ended in a dismissal of the

charges).  That another attorney would have pursued different

tactical routes than Singer is not determinative.  See

Strickland, 466 U.S. 689-90 (noting that "there are countless

ways to provide effective assistance in any given case" and

"[e]ven the best criminal defense attorneys would not defend a

particular client in the same way"); see also Baskerville v.

- 26 -

<u>Dennison</u>, No. 04-Civ-10261(PKC), 2005 WL 3535067, at *3, 6 (S.D.N.Y. Dec. 27, 2005) (rejecting ineffective assistance of counsel claim because counsel's limited experience as criminal defense attorney did not prejudice client). Thus, I find that Chu failed to demonstrate that Singer had insufficient experience to effectively litigate this case.

### ii. <u>Substantial Prejudice</u>

As I hold that counsel's actions met an objective standard of reasonableness, I need not consider whether these actions caused substantial prejudice. See <u>Chang v. United States</u>, 250 F.3d 79, 84 (2d Cir. 2001) (noting that because defendant did not establish that counsel's assistance was unreasonable, court need not address whether defendant was prejudiced by ineffective counsel); <u>see also</u> <u>Bennett v. United States</u>, 663 F.3d 71, 85 (2d Cir. 2011). I note, however, that I am not persuaded that the result would not have been any different had Singer inspected the counterfeit goods, requested an interpreter, or made further efforts to negotiate a reduction in the value of the goods.

## CONCLUSION

For the reasons set forth above, Chu has failed to demonstrate any basis for relief under 28 U.S.C. § 2255. The motion is therefore denied. I certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal taken from this decision and order would not be taken in good faith.

The Clerk of the Court shall close this case.

SO ORDERED.

Dated:    New York, New York
           December 5, 2012

DENNY CHIN
United States Circuit Judge
Sitting by Designation